Good morning, Your Honors. May it please the Court, I'm Assistant Ramsey County Attorney Robert Roach on behalf of Appellant Richard Paul. As the Court knows, this case involves an interlocutory appeal of a denial of summary judgment on the basis of qualified immunity based on alleged conduct that took place during a strip search. I'd ask the Court respectfully to bear in mind three critical points regarding the qualified immunity analysis. First, as this Court and the Supreme Court have said, to defeat an assertion of qualified immunity, the plaintiff must show that the state of the law at the time of the alleged conduct was so clear that every reasonable officer would have known that the conduct was illegal. The issue must have been placed beyond debate in the words of this Court. In this case, plaintiff cannot show that it was beyond debate that the alleged conduct was illegal because, as we have shown in our briefs, numerous courts have held that conduct similar or more egregious than my client's alleged conduct did not violate a detainee's civil rights. And we're not talking about the only facts we have in this State are the sworn statement at the bottom of page 6 of this complaint by the, by Mr. Glover. That's the only facts in the case, right? You addressed a straight denial that we ignore on summary judgment by the officer. That's the only facts we've got, right? You are right, Your Honor. Well, you know, our, our best case, Berryhill, makes it an all circumstances case. So this is kind of like the, some of the stuff we were talking about are, some of the issues we were talking about earlier this morning. How can you tell what the strip search was for, how it was done, where it was done, when it was done, any of the circumstances from this? Your Honor, our position is that even taking the facts as alleged by the plaintiff in his complaint, because it was, it was a verified complaint. Right. All you've got is that he, my client allegedly grasped and squeezed his, the, the, the detainee's penis and gestured, that's it. There's no, there are no other facts and evidence that would suggest there was any other conduct that the strip, the strip search was for any improper purpose. And therefore, the, the, under the, the case law that we've cited, the appellant cannot show that the alleged conduct violated a clearly established right. What did you say? There's no reasonable inference that it was for an improper purpose? Plaintiff has never claimed that and has certainly not offered any facts to that effect. Why isn't there just a reasonable inference from the face of the factual allegation? That was never argued below, and it was... And why isn't it just obvious? I mean, what would be the legitimate penological purpose of taking the alleged step, taking the alleged action? Your Honor, there are numerous, there are numerous cases, and these are cited in our reply brief, that do, where federal courts have taken the position that physical conduct with a detainee's intimate areas is a legitimate thing, a legitimate action in the context of a search. And so I would refer the Court to... Like the strip search cases, or? Strip searches and pat searches, yes. And, and those cases are cited in our reply brief where the Court, the Courts have said this is something that, that is legitimate. Yeah, I mean, there are cases saying strip searching is, under certain circumstances and certain procedures, reasonable. And that contact with the inmates or detainees' intimate areas may be required. But that's not really, is that really what's alleged here? Yes. What is alleged here is that during a strip search, there was rough handling... Grasp. Grasp, squeeze. We have grasp in every inference you can take for a favorable claim. Grasp, squeeze it hard. And then we have squeeze in every inference. Squeeze it hard and gestures. That's really what we have. And, and, and my point, Your Honor, is that if the Court looks at the body of case law that we've cited where similar allegations have been found by dozens of courts, not... Give us a couple of examples. Sure, Your Honor. I would say, well, all the cases in, in my brief, but I'm going to limit to a couple of examples. You said there are dozens of cases with more egregious facts. Give us a couple of examples. Yes. Sure. Ferguson v. Cobb. Two years after the alleged conduct in this case, the inmate testified that the officer grabbed his genitals in a very rough manner during a search, that this was done to send a message that it was punitive, that the guard was unhappy with him. Citing Berryhill, the district court said there was not a constitutional violation. So it's a district court case, sir? Yes, Your Honor. These are district court cases. And it was applying Berryhill, right? I'm sorry? It was applying Berryhill, right? Yes, Your Honor. Okay. Go ahead. Duval v. Brunner. Five years after the alleged conduct in this case. Claimed that, the inmate claimed that a corrections officer sexually assaulted him by grabbing the inmate's genitals and ordering him to move. Again, citing Berryhill, the district court said no violation. I didn't say grab hard. Go ahead. I believe he did say, I don't remember the specific facts, but they're showing an inference that it was painful. I thought it was painful. I want to take this one more case, if that's okay, Your Honor. Yeah. Alexander v. Steele County, just before the alleged conduct. Inmate claimed that the officer grabbed the inmate's penis and testicles during a pat search. Again, under Berryhill and numerous other cases, the court said no constitutional violation. That was another district court within the Eighth Circuit? Yes. And are these clothed cases, counsel? A couple of these are clothed cases. Which, through clothing, right? Are these naked cases? Some of them are, Your Honor. No, the ones you just talked about, the district court cases, the three you just talked about. Because there are, the clothed cases seem to be a little different than the naked cases. Your Honor, we addressed this in our reply brief, and there are numerous cases. I don't have the brief here at the podium, but I would respectfully refer, Your Honor, to that portion of our reply brief, where we walk through and talk about the fact that there are numerous cases where there's been contact with unclothed, in the pants, in the underwear cases, where the courts have said that that is not a constitutional violation. So there is no... What's your argument for why it would not be a constitutional violation if it's not part of a proper strip search, you know, for security purposes, if it's just a gratuitous grabbing and squeezing? Is there some argument that that's... My argument, I'm not suggesting that that kind of act would be acceptable outside of a search context, Your Honor. I apologize if that was somehow the impression I was getting. Well, I mean, that's the allegation we have. I think... I respectfully disagree with you. If you take the argument, if you take the complaint to mean that it was not part of a search, if you take that, I understand you don't want to assume that. But if you do assume that, you're not defending the constitutionality of that conduct then. Your Honor, I have to respectfully disagree with the premise of your question. If I could just make my point in response. It's not very helpful if you disagree with the premise, because I already know you I was asking you a legal question. To legal questions, would... You assume the contrary premise. Would that conduct be acceptable outside of the context of a search? Then I would say no. But what I would say, because I'm here to argue this case, obviously, Your Honor, that is not something that the plaintiff said in his complaint. He said it was in the context of a strip search. It is not something... He didn't tell the reason for the strip search, right? That is not in the record. The reason for the search is not in the record. But the plaintiff never... No, Your Honor, because the plaintiff never argued below and never asserted in his complaint that there was, that the search was for an improper purpose. So there's no evidence to create an inference that the search was in any way improper. And that's not something that the district court held. The district court just said that rough handling during a strip search, you know, violates a clearly established right. And our position is really very simple. It boils down to this. As this Court and the Supreme Court have said, the standard is what would a reasonable officer know to a certainty? Is it beyond debate? And our position is very simple. A reasonable correction officer cannot and should not be expected to know more about the law than trained Federal judges across the country, whether they are district judges or appellate judges. We have cited dozens of cases from both district courts and circuit courts, both before the alleged conduct and after the alleged conduct, and within the circuit and outside of the circuit, where the courts have said conduct of this type is not a violation of an inmate's constitutional rights. Yeah, maybe this case raises a question about the evolving standards of decency, which once was, you know, somebody from my antediluvian background would say, what's the big deal? Your Honor, I recognize that we do have evolving standards, but I would refer respectfully to the Court to the cases that post-date my client's alleged conduct. I see. So there's been no evolving standard of conduct or anything like that. In other words, under our case law, this was clearly erroneous finding on the part of the or decisions on the part of the district court. Your Honor, what I'm saying is that the case law shows that there is no bright line agreement by judges across this country. Therefore, there could be no violation under these facts. Therefore, qualified immunity applies to my client. You're saying the same thing again. Maybe not. Well, certainly the Court could issue a decision that says, you know, from this day forward, we're going to clarify. But as the Court knows, this happened in 2015, and my client is entitled to rely on the state of the law at the time of the alleged conduct. He is not required to guess about future development. And again, I'm going to reserve for rebuttal, but judges across the country in 2020, in 2021, and in 2022, these cases are setting up briefs, are saying conduct like this is not a violation. Given that precedent, I respectfully submit it cannot fairly be said that a corrections officer who is not a lawyer or a judge would know beyond debate that this alleged conduct is unlawful. Unless there are other questions, I'll reserve the rest of my time for rebuttal. So you're saying you think even if we assume that it was a gratuitous action unrelated to a legitimate purpose, that there are cases out there saying that kind of gratuitous handling of intimate areas of a prisoner is not unconstitutional? Is that what you're saying? Are you saying there are cases saying when it's part of a legitimate search, it's not unconstitutional? There are cases that even outside of the context of a search have said that that kind of behavior is not a violation. But what I'm saying is in this case, and this is a critical fact, Your Honor, in this case, it was part of a search. And that's something I emphasize in both of my briefs, that the district court and the plaintiff have relied almost exclusively on non-search cases and that that is inappropriate precisely because this was in the context of a search and there is no allegation and no evidence that the search was improper. Unless there are other questions, I'll reserve. All right. Thank you for your argument. Ms. Fisher, we'll hear from you. All right. This case starts, and we believe ends, with an undisputed and fundamental proposition that sexual assault of inmates at the hands of those entrusted with protecting and That's what this Court held in 1992 in Watson v. Jones. That's what Congress stated firmly and unanimously with its enactment of the Prison Rape Elimination Act, PREA, in 2003. It's been a consistent line, of course, of cases decided by this Court and this Court's sister circuits in the decades since. Now, Officer Paul's response to that consistent line of case law and congressional action is, well, I couldn't have had notice. I just heard Counselor for Officer Paul come up and point to three cases to say, I couldn't have had notice. Ferguson, DeWalt, and Alexander. To answer Judge Benton's question, in each of those, the Court either explicitly or implicitly suggested that the inmate or detainee was clothed. Each of those are, of course, unpublished district court decisions that wouldn't even be binding on the same judge in a future case. And each of those cases purported to apply Berryhill. And respectfully, I suggest that this Court is in the best position to interpret what this Court meant in Berryhill. Berryhill is a 1998 decision in which a detainee was touched over the buttocks. The detainee, or it might have been an inmate, was clothed. And this Court noted that the inmate didn't seek any sort of medical care or even report that he thought that this was an assault. And that is – stands in stark contrast to the verified complaint that Mr. Glover provided below. He reported – Let me interrupt you. This is at the stage of summary judgment. At summary judgment, we're still relying on the – I know it's verified complaint, right? And that's the only facts in the case. You never have tendered or offered any kind of explanation for what the search was about, right? You've had chance for discovery and everything? Yes, Your Honor. I'd note that Mr. Glover was pro se before or below the District Court. And of course, this Court affords pro se individuals a little bit more latitude in the way in which they present their claims. But respectfully – Well, didn't he have attorney at some point in the District Court? No, Your Honor. Mr. Glover was always proceeding pro se in the District Court. We were appointed sua sponte by this Court on appeal. Thank you. I didn't get that. Appreciate it. And he was never deposed by the defendants? No. My understanding is that there was no deposition that was taken. And so the primary evidence in this case is the verified complaint. That's actually the same posture as Watson v. Jones, which was also a summary judgment case. The only evidence of sexual assault in that case before this Court was a verified complaint. And the Court still held that it was error to, in that case, grant summary judgment to the officer based on the alleged sexual assault. And that was back in 1992. And so the parallels between Watson and this case, we think, are striking. I also think that it is more than just that sentence on page 7 of the appendix where Mr. Glover reported the grasping, which, of course, as Your Honors have noted, you know, it's hard to understand what legitimate penological purpose there could be for grasping and squeezing a naked, exposed genitalia. But even beyond that, there's more than that in this verified complaint. There are the reports by Mr. Glover that he immediately requested and attempted to seek medical care, including for his psychological injury as a result of the sexual assault. That's at page 15 of the appendix. There's also the verified complaint attaches some of the grievances that Mr. Glover filed. One of those does expand upon the gesture that's referenced on page 7 of the appendix and refers to that gesture as a sexual gesture. And that's at appendix page 38. So I do think that it's more than just this one sentence in the verified complaint, but even if it was just that one sentence. Okay. Help me, because I thought it was the one sentence in the complaint. Yeah. And I appreciate your help. Are there other items in the complaint or in the district court besides the one paragraph I was focusing on? I think I've directed the court to the ones that I think are. Okay. You think that's it? Are most probative. I mean, the other key. What does it say about the gesture? Do you have the words, since I don't know them? If they're bad, you don't spell them or do them however you think appropriate. But I don't know anything about it, and I would appreciate knowing. So on page 38 of the appendix, that's where it's in one of the complaints or the grievances, it refers to it as a, quote, sexual gesture. And so that's the wording that is used. I also, again, this is, I think it's important to look at what the contrary evidence was that was presented by Officer Paul. Officer Paul did not assert that this was a legitimate script search, that he was concerned that there might have been contraband somewhere exposed in the buttocks or the genitalia. Like some cases. He said there was never a touching. He said there was no touching. And so. But then it says or otherwise touched him inappropriately after the word never, as if the word never didn't mean never. That's true, Your Honor. But there's not a lot of detail there. And so I think the defense that I'm hearing on appeals, well, this could have been a legitimate part of a script search, sure. But that's not the defense in the district court. The defense in the district court was, well, this just never happened. And frankly, I think that speaks to the fact that it's because if it did, everyone here agrees that that would be a sexual assault. I think that comes straight out of this Court's case law, that grabbing an erogenous or genital area for no legitimate penological reason is sexual assault. That comes right out of PREA, where Congress defined sexual assault to include sexual fondling, which is defined, and this is at 34 U.S.C. 30309, as the touching of the private body parts of another for purposes of sexual gratification. It includes the genitalia. Then, of course, there's the Attorney General regulations that expand upon PREA and that likewise, these are at 28 CFR 115.6, likewise say that the touching of indirectly or directly, and there it actually expands, including through clothing of genitalia without consent is sexual assault. I mean, I think the reason why perhaps Officer Paul's declaration below doesn't say, well, grasping and squeezing a genital was necessary as a part of my script search is because that's not something that could be said consistent with the law of this circuit, with congressional action, and, of course, with the robust consensus of cases from other jurisdictions. You know, I think that this is one of those rare cases where, as Your Honors are well aware, there are multiple paths to say that qualified immunity is not appropriate. It could be this is obvious. It could be our cases are controlling, or it could be there's this robust consensus. This is the first time that I have ever stood up here, and I don't think it happens often. We're actually all three. All three paths to denying qualified immunity are here. They are present. This Court has held for decades that conduct like this, the gratuitous and non-necessary touching and squeezing of a private intimate area, is unconstitutional. And which do you think, Watson is your best case, or what do you think is your best Eighth Circuit case? I think Watson is a really good case because there again you have, I mean, admittedly in that case there are repeated pat-downs, but the Court's analysis doesn't focus on the repeated nature of the pat-downs, but rather just the intrusive nature of a non-necessary, a non-consensual pat-down. And, in fact, in Watson I think it's over clothes, so it's even perhaps less egregious than what happened here. The other two cases that I think really tee this up early on in the 1990s are Seltzer Bay, another case that involved exceeding the scope of a proper pat-down. There you've got the two touches on the butt with a nightstick that the Court focuses on. And then the last one that we really think just closes the loop would be Haberther versus City of Raymoor, Missouri. That wasn't in the custodial context, but this Court noted that focused on the fact that the touching was under clothing and in a private erogenous area, and the Court said, and I'm quoting, that that sort of conduct was, quote, intrusive, demeaning, and violative of personal integrity, end quote, and made out a constitutional claim. And so those are just the cases that talk about, you know, the fact that this is a constitutional violation. That's before you even get to the many, many cases that say it's clearly established that sexual assault, which, again, I don't think anyone's here arguing that this wouldn't be sexual assault if it wasn't if there was no legitimate penological purpose, which there is none in the record. There are numerous cases that say that. Do you think the district court construed the record to mean that it was not done for a legitimate purpose? Yes, Your Honor. I do think that that comes right out of the district court's analysis, and, of course, given the fact, I think that's on addendum, I believe it's 42 to 43. The Court walks through. This action wasn't inadvertent. Paul hasn't asserted that it was. A jury could have found that squeezing a penis hard was not penologically necessary. Do you think those are evidentiary sufficiency conclusions? I do, Your Honor, and so they are, of course, beyond the scope of this interlocutory review. The question is just whether that creates a material fact question. I think it does, and whether the law has clearly established that that sort of – that sufficient evidence of sexual assault would violate Mr. Glover's constitutional rights, and there, again, we think the answer is yes, especially given this interlocutory review. Your Honors, before I sit down, I think it's important to note that in 2003, when Congress enacted PREA, it made a number of findings, and one of those findings was that members of the public and government officials are largely unaware of the epidemic character of prison rape and the day-to-day horror experienced by victimized inmates. Unfortunately, that day-to-day horror continues. Just at the end of last year, Congress was once again holding hearings about rape and sexual assault in the carceral context, and barriers to getting on the other side of sexual assault and eradicating the day-to-day horror of sexual assault on inmates persist.  This is sexual assault that occurs at the hands of those that control and have custody and power over vulnerable inmates. There were barriers to eradicating sexual assault in prisons in 2003. Barriers remain today, but a barrier should no longer be the defense of qualified immunity. I think we are decades past that, and so we respectfully request that the Court affirm the district court's denial of summary judgment to Officer Paul and let a jury be the one to determine whether this sexual assault occurred and to what extent Mr. Glover has been harmed. Counsel, I notice one final question. I notice that some of these cases, including the district court, talk about remanding for an amended complaint. I don't recall doing that in my appellate experience. You know what the Third Circuit and other circuits are doing when they say that? Remanding for an amended complaint? It may be the way the district court referred the case. Don't worry about it. Yeah. You know, I think I am aware of what Your Honor is talking about. I don't think that here I think that the law is so well established that there is no need to replead within the context of whatever legal standard applies. I think that there is a material fact question based on the record as it exists. So we respectfully request that there is just remand for trial. Thank you. All right. Thank you for your argument and thank you for accepting the appointment in this case. Mr. Roche, we'll hear rebuttal. Thank you. In answer to your question, Judge Benton, about the clothed versus unclothed, if the Court looks at pages 20 to 24 of our reply brief, we cited a half a dozen cases where courts across the country have said even an unclothed grabbing or grasping is not a constitutional violation. We covered this in our reply brief. Many of the so-called facts that Plaintiff's counsel is referring to consist of inadmissible hearsay and the district court did not consider those. The reliance on Watson is misplaced. Watson was issued in 1998. In the 20-some-odd years, 25 years since that decision was issued, if the Court looks at the cases cited in our brief, dozens and dozens of courts across the country, including in this circuit, have held that conduct like what Officer Paul is alleged to have done is not a constitutional violation. And what I keep coming back to is if reasonable, trained Federal judges after Watson, after the adoption of PREA, can say, I have a case in front of me and I am saying that this sort of conduct does not violate detainees' constitutional rights, then it cannot be fairly and intellectually honestly said that no corrections officer who is not a lawyer could understand that that conduct is not illegal. To put it another way, a corrections officer in this circuit has the right to rely on the law as stated by judges, whether they are appellate judges or district judges. My client as a corrections officer should not be expected to second-guess a judicial decision from judges in this district in this circuit, which is really what Planoff is advocating, saying ignore all these district court decisions and let's — and maybe even more saying, let's take cases that are not particularized to the facts of this case. Let's take cases that don't involve searches and say we're going to extrapolate from that what conduct is acceptable during a search. And I'm — But you're really asking us to write an opinion that says a reasonable officer could have believed that a gratuitous, illegitimate grabbing and squeezing of private parts is constitutional. That is not what I'm asking you to write, Your Honor. What I'm asking — Do you think that could be written? No, and that's not what I'm asking you to write. You don't defend that proposition. What I'm asking you to — the opinion I'm asking you to write is to say in 2015 when this occurred, there was not a bright line that said that the alleged grabbing and squeezing of a penis and gesturing during a strip search was a constitutional violation. There was no such bright line, and that's the opinion that I'm asking the Court to write. That's the same as saying a reasonable officer could have believed that it was constitutional, isn't it? I guess the — where I'm tripping — and I've just got two seconds. Would you like me to finish the answer, Your Honor? What I'm tripping over is you throwing in the word gratuitous, and I don't believe that's what the district court found. Oh, I see. And so that's what I'm tripping over. I don't think the district court said that taking the facts in light most favorable to the plaintiff, a jury could find that this was — I guess she didn't use the word gratuitous, but in substance, didn't she say that? I don't believe that that's what she said. She wrote the opinion that she did, and again, I'm relying on the plethora of case law that I've cited where judges have said similar conduct is not a violation, and in the face of that, it cannot be fairly said that there has been a bright line such that this issue is beyond debate and no reasonable person in my client's position could have believed otherwise. And I am out of time, but obviously I'd be happy to answer any last questions. Thank you, Your Honors.